RECEIVED
IN LAKE CHARLES, LA
APR - 8 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RAGAN MAYO<br>La. DOC #104976 | CIVIL ACTION NO. 08-1446<br>SECTION P |
| VS. | JUDGE TRIMBLE |
| WARDEN BURL CAIN | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Ragan Mayo filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on September 30, 2008. Doc. 1. Petitioner is an inmate in the custody of Louisiana's Department of Corrections and he is incarcerated at the Louisiana State Penitentiary, Angola. Petitioner, claiming actual innocence, attacks his 1999 convictions for aggravated rape and the life sentences imposed by the Thirtieth Judicial District Court, Vernon Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

### *Background*

On May 13, 1999, petitioner was found guilty as charged of nine counts of aggravated rape following trial by jury in the Thirtieth Judicial District Court. Petitioner received concurrent and consecutive life sentences. Doc. 1-3, at 7; Doc. 1-4, at 57. Petitioner filed a motion to reconsider sentence, and while that matter was pending, petitioner appealed his convictions and sentences to the Third Circuit Court of Appeals. On May 3, 2000, in an unpublished opinion, the Third Circuit affirmed petitioner's convictions but remanded to the trial court for resolution of petitioner's motion

to reconsider sentence. *State v. Ragan Mayo*, 775 So.2d 710 (La. App. 3 Cir. 5/3/2000). On June 20, 2000 the trial court denied the motion to reconsider sentence. Doc. 1-3, at 5.

No appeal followed, and petitioner did not seek further direct review of his conviction and sentence in either the Louisiana Supreme Court[1] or the United States Supreme Court. Doc. 1-3, at 5; Doc. 1, ¶ 6(d).

On July 21, 2001, petitioner filed a *pro se*[2] application for post-conviction relief in the Thirtieth Judicial District Court raising claims of ineffective assistance of appellate counsel and denial of direct review. Doc. 1-4, at 5. On September 10, 2001, petitioner's first application for post-conviction relief was denied by the Thirtieth Judicial District Court with the notation, "Motion denied. No basis to grant this request has been shown." Doc. 1-4, Exh. A, at 12.

Petitioner apparently sought further review in the Third Circuit Court of Appeals. According to petitioner, on January 8, 2002, the court, in an unpublished order under Docket Number KH-01-01263, "denied in part and granted in part Mayo's writ application remanding the matter back to the trial court again with instructions that an evidentiary hearing be held to determine if Mayo was entitled to an out-of-time appeal of his amended sentence." Doc. 1-4, at 5.

On January 18, 2002, petitioner retained attorney Elvin C. Fontenot as post-conviction

---

[1] In the original petition, Mayo claims that he sought further direct review in the Louisiana Supreme Court and that Louisiana's high court denied relief on September 10, 2001 in a ruling under Docket Number KH-01-01263. Doc. 1, ¶ 6(c). However, nothing submitted by plaintiff supports that claim. Further, in his writ application filed in the Third Circuit Court of Appeals seeking review of the denial of his application for post-conviction relief, petitioner alleged, "On June 28, 2000, the trial court denied Mayo's Motion to Reconsider Sentence and no appeal of the denial was taken. At this juncture, it should be noted that Mayo's appellate counsel, Mr. James R. Mitchell, did not seek certiorari in the Louisiana Supreme Court on this Court's affirmation of Mayo's conviction and neither did Mayo's appellate counsel seek appellate review of Mayo's amended sentence." In that same pleading, petitioner referred to a writ application filed in the Third Circuit under Docket Number KH 01-01263. Doc. 1-4, at 4-5.

[2] In his subsequent writ application to the Third Circuit, petitioner claimed that he filed the pleading based on erroneous information supplied by inmate counsel. Doc. 1-4, at 5.

2

counsel. *Id.* On April 9, 2002 the trial court ordered an evidentiary hearing on the out-of-time appeal issue and fixed the hearing for May 9, 2002. Meanwhile, on May 2, 2002, counsel filed a second application for post-conviction relief alleging ineffective assistance of counsel. On June 14, 2002 the Court set a hearing date on the application for post-conviction relief. Doc. 1-4, at 5-6. Thereafter, according to petitioner, counsel "repeatedly moved for continuances which were granted by the trial court . . . ." Doc. 1-4, at 6.

On February 6, 2004, Mr. Fontenot obtained the taped statement of Stella Renee Mayo Gibson, the alleged victim of the offense. The taped statement was transcribed as a "sworn affidavit" or "statement" and purported to be a recantation of her trial testimony by the victim.[3] Doc. 1-4, Exh. B, at 13-16. On February 20, 2004, counsel filed a Motion for New Trial based upon this newly discovered evidence. Doc. 1-4, Exh. C, at 17-20. On February 24, 2004, the trial judge denied the motion as untimely.[4] *Id.* at 19 (citing La. C. Cr. P. art. 853).

Thereafter, on May 28, 2004, an evidentiary hearing was convened on the pending application for post-conviction relief. The state objected on procedural grounds and the trial court

---

[3] The affidavit was a transcribed interview between Mr. Fontenot and a person who identified herself as Stella Mayo Gibson. In the interview "Ms. Gibson" acknowledged her trial testimony and then, when asked, "Now, with respect to the testimony and particularly those portions of your testimony that relate to sexual conduct between you and your father, did those things occur?" She replied, "No." Then, when asked, "Is it your statement today that the testimony that you gave at the trial . . . May 10 of 1999 that the testimony that you gave concerning the sexual conduct between you and your father was not true?" She replied, "Yeah." She further stated, "I'm here today . . . to say it was all a lie. That I was very wrong and when I grew up I realize now that it's wrong and he's spending time in prison that he shouldn't even be spending because nothing that happened that day . . . nothing ever happened. It was all false. It was all a lie." She concluded her statement by denying the truth of each of the counts of the indictment and then stated, "Well, I would really like to say that he is serving a sentence that he should not be serving because everything was based on a lie. I asked to get out of this before we ever went to trial and they told me specifically that we were too far up in it to turn back now and I really believe the he aught [sic] to be a free man because he never committed any crimes whatsoever to any of us, ever, and I think he should be a free man." Doc. 1-4, Exh. B, at 13-16.

[4] Louisiana Code of Criminal Procedure, article 853 provides that a motion for a new trial must be filed and disposed of before sentence; however, when the motion is based upon the discovery of new and material evidence, it must be filed within one year after verdict or judgment of the trial court.

3

denied relief finding the application repetitive. Doc. 1-4, Exh. D, at 21-28 (citing La. C. Cr. P. art. 930.4). At no time during the proceedings did counsel address the issue of the victim's recantation. *Id.* Thereafter, counsel applied for writs of review in the Third Circuit Court of Appeals.

On October 12, 2004, the Third Circuit denied writs and noted,

> Relator's claim of ineffective assistance of counsel was not repetitive, because the basis for the latter claim is different than the claim asserted in Relator's prior application, and the claim has never been considered by the trial court. However, the claim was properly denied as successive. At the hearing on the application, Relator was given sufficient opportunity to state the reasons for his failure to raise the claims in his previously filed application. Because he did not present evidence for his failure to raise those claims, we find no error in the trial court's denial of Relator's application. Accordingly, we deny his application to this court.

*State v. Ragan Mayo*, KW 04-00899, Doc. 1-4, Exh. E, at 29 (internal citations omitted).

Petitioner sought review of this judgment in the Louisiana Supreme Court; however, on March 11, 2005, his application for writs was denied without comment. *State v. Ragan Mayo*, 896 So.2d 65 (La. 2005).

Meanwhile, on December 20, 2004, petitioner wrote a letter to Mr. Fontenot discussing issues of post-conviction relief, clemency, and petitioner's concerns about whether he might be allowed to present to some court the recanting statement of the victim. Doc. 1-4, Exh. F, at 30.

On December 21, 2004, counsel provided to petitioner a copy of the Clemency Application he prepared on petitioner's behalf. Counsel also reminded petitioner that his attempt to obtain a new trial had been denied by the trial court. Finally, counsel advised that he would prepare an application for post-conviction relief on petitioner's behalf. Doc. 1-4, Exh. G, at 31.

On February 11, 2005, petitioner corresponded again with retained post-conviction counsel. Petitioner supplied counsel with a copy of his Master Prison Record and indicated his understanding

that counsel would file an application for post-conviction relief on his behalf. Doc. 1-4, Exh. H, at 32.

Information purported to be from the file of retained counsel would indicate counsel instructed staff to prepare an application for post-conviction relief and a petition for clemency on petitioner's behalf as well as a new application for post-conviction relief based on the recanted testimony. Doc. 1-4, Exh. I, at 33-34. On January 19, 2006 petitioner corresponded with counsel concerning the status of his case. Doc. 1-4, Exh. J, at 35.

On June 29, 2006, petitioner again corresponded with counsel and advised him that his services were no longer required. Petitioner authorized counsel to deliver the complete file to Donna West. Doc. 1-4, Exh. K, at 36. On July 25, 2006, Ms. West acknowledged that she had retrieved the tape recorded statement and transcript from counsel. Doc. 1-4, Exh. L, at 37.

On April 30, 2007, petitioner filed a *pro se* application for post-conviction relief raising a single claim for relief: "Mayo was denied due process, a fair trial and the presumption of innocence under the substantive provisions of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 2 and 16 of the Louisiana Constitution of 1974, where his actual innocence based on newly discovered evidence is grounds for relief." Doc. 1-4, at 43. In support of this claim he cited no jurisprudence and made only the following argument:

> On February 6, 2004, Stella Renee Mayo Gibson gave a sworn statement attesting to the fact that she lied on the witness stated in Mayo's trial and stating, "nothing ever happened." Ms. Gibson also states in this sworn statement that prior to going to trial she asked the District Attorney to get out of this situation because it was all based on a lie. She says that she was told that it had gone too far at this point to turn back.... The prosecutor pushed forward and tried Mayo with full knowledge that Mayo was innocent of the charged offenses. The District Attorney took advantage of the young Stella Renee

5

> Mayo's fear of his authority and coerced her into giving false testimony.

*Id.* at 50. Petitioner also requested DNA testing to establish that he is not the biological father of the alleged victim. *Id.*

On May 15, 2007, the trial court denied relief. With regard to the request for DNA testing the court noted, "[p]aternity is not an element of the offense [of aggravated rape]. Therefore, whether or not he was the biological father of the victim is not an issue to be established in order to obtain the conviction. Therefore there is no basis to support the request by Mayo for DNA testing." Doc. 1-4, at 39. Thereafter the court noted that the evidence was discovered on February 6, 2004 and therefore the application, which was filed on April 30, 2007, was untimely. Doc. 1-4, at 40 (citing La. C. Cr. P. art. 930.8).

On June14, 2007, petitioner sought writs in the Third Circuit Court of Appeals arguing a single assignment of error – "The trial court erred in dismissing Mayo's Application for Post-Conviction Relief as being untimely since Mayo filed the application within one year of obtaining the evidence, exercised due diligence in seeking to have the evidence presented, and because the evidence is so compelling as to Mayo's innocence that it warrants consideration in the interest of justice." Doc. 1-4, at 2-11. He framed the issue before the court as follows: "Should the evidence of the alleged victim's affidavit recanting her trial testimony and proving Mayo's innocence be considered in the interest of justice, in order to rectify his unjust conviction?" *Id.* Petitioner alleged prosecutorial misconduct; however, that allegation concerned the prosecutor's representations to the jury that petitioner was the biological father of the victim. *Id.* At no point in his writ application did petitioner allege that the prosecutor had knowingly presented perjured testimony. *Id.*

6

On August 10, 2007, the Third Circuit denied writs finding "no error in the trial court's ruling . . . ." *State v. Ragan Mayo*, KH 07-00761, Doc. 1-4, at 75.

On September 10, 2007, petitioner signed an application for writs directed to Louisiana's Supreme Court, he mailed it on September 11, 2007, and it was received and filed in the Supreme Court on October 5, 2007. Doc. 1-4, at 61, 76. In his writ application petitioner argued three claims for relief: (1) "[t]he District Court erred in holding that petitioner provided no explanation as to why his claim of newly discovered evidence was not made earlier"; (2) "[t]he District Court erred in holding that petitioner's application does not raise any new grounds under La. C. Cr. P. art. 930.3, nor does it fall under any exception to the time limitations under La. C. Cr. P. art. 930.8, particularly (A)(1) "; and (3) "[t]he District Court erred in holding that petitioner's application for post conviction relief is untimely as petitioner knew of this evidence at the time that his successive application was pending." Doc. 1-4, at 66. With regard to the victim's testimony, petitioner argued:

> The victim has provided a tape recorded [subsequently transcribed and notarized] deposition as to Petitioner's actual innocence . . . The District Court should have had a hearing where evidence and testimony could have been put on record, especially when Petitioner has made a prima facie showing of his actual/factual innocence via newly discovered evidence.
>
> The victim, Stella Renee Mayo Gibson, admitted, among other things, that she gave the deposition of her own free will, that she did testify at trial that Petitioner performed certain sexual acts with her, and that she asked to get out of this before trial but she was told that it had went to far up to turn back, implicating prosecutorial misconduct in forcing or swaying a child under the age of twelve to testify untruthfully.

Doc. 1-4, at 72. On August 22, 2008, petitioner's writ application was denied by the Louisiana Supreme Court. *State ex rel. Ragan Mayo v. State of Louisiana*, 988 So.2d 251 (La. 8/22/2008); *see also* Doc. 1-4, at 77.

7

On September 30, 2008 petitioner filed the instant petition for writ of *habeas corpus*.

## *Law and Analysis*

### *1. Limitations: 28 U.S.C. § 2244(d)(1) (A) and (D)*

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions codified at 28 U.S.C. § 2244(d). *Villegas v. Johnson*, 184 F.3d 467, 468 (5th Cir. 1999); *In Re Smith*, 142 F.3d 832, 834 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997)).

Title 28 U.S.C. § 2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A). However, petitioner implies that he is entitled to invoke the provisions of § 2244(d)(1)(D), under which the commencement of the one-year period of limitation runs from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." Under either analysis, however, petitioner's claim is untimely.

#### *a. 28 U.S.C. § 2244(d)(1)(A)*

Petitioner appealed his conviction and sentence to the Third Circuit Court of Appeals. On May 3, 2000, that court affirmed his conviction but remanded the case to the district court to resolve the still pending motion to reconsider sentence. The motion to reconsider was denied in the trial court on June 20, 2000. Doc. 1-3, at 5. Petitioner did not appeal nor did he seek further review in the

Louisiana Supreme Court. Had the matter not been remanded to the District Court, petitioner would have had a period of 30 days from the date the Third Circuit mailed its opinion within which to seek further direct review in Louisiana's Supreme Court.[5] Following the denial of his motion to reconsider sentence, petitioner had a period of 5 days (exclusive of holidays) within which to file a second appeal.[6] Giving petitioner the benefit of the doubt, it would appear that his judgment of conviction and sentence became final by the conclusion of the time for seeking further direct review, at the latest, on July 20, 2000, thirty days following the denial of his motion to reconsider sentence. Thus, pursuant to § 2244(d)(1)(A), petitioner had one year from that date, or until July 20, 2001 to file his federal petition for *habeas corpus*.

Petitioner filed an application for post-conviction relief in the District Court on July 21, 2001 Doc. 1-4, at 5. The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review was pending in state court is not counted toward the limitation period. *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). However, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas*, 184 F.3d 467 (citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998)). Thus, petitioner's AEDPA period of limitations, if calculated under § 2244(d)(1)(A), expired before he filed his first application for post-conviction relief.

### *b. 28 U.S.C. § 2244(d)(1)(D)*

---

[5] See Louisiana Supreme Court Rule X, § 5(a) which provides that an application for writ of certiorari seeking review of the judgment of a court of appeals must be filed within 30 days of the date that notice of judgment is mailed to the party or his attorney.

[6] Prior to its amendment by Acts 2003, No. 949, §1, Louisiana Code of Criminal Procedure, article 914 provided

Petitioner implies that he is entitled to invoke the provisions of § 2244(d)(1)(D) under which the commencement of the one-year period of limitation begins from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." Doc. 1-3, at 7. Petitioner further implies that the factual predicate of his claim – his actual innocence – was not discovered until February 6, 2004, the date his retained attorney tape recorded and then memorialized in affidavit form the recanting statement of the victim, Stella Renee Mayo Gibson. Doc. 1-4, Exh. B, at 13-16.

Even if the evidence is considered to have been discovered on February 6, 2004 – the date the recanting testimony was given – petitioner's claim is still time-barred since more than one year elapsed between that date and the date petitioner filed the instant federal *habeas corpus* petition.

When the affidavit was executed, petitioner's second application for post-conviction relief was pending and, as noted above, remained pending until March 11, 2005, when the Louisiana Supreme Court denied writs. Therefore, the one-year period of limitations described by § 2244(d)(1)(D) commenced on March 12, 2005 and, petitioner had until March 12, 2006 to file his federal petition. Nevertheless, petitioner's third application for post-conviction relief was not filed until April 30, 2007.

Further, this third application for post-conviction relief was denied as untimely and thus could not serve to toll the limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005) (noting that a post-conviction petition that is not timely under state law is not "properly filed" for purposes of § 2244(d)(2) and therefore does not initiate a tolling period).

---

that a motion for appeal must be filed within 5 days of the denial of a motion to reconsider sentence.

*c. Equitable Tolling*

In "rare and exceptional circumstances," courts are permitted to toll AEDPA's one-year statute of limitations. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "'[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). The petitioner was not actively misled by the state of Louisiana; however, he implies that he was misled by his attorney.

An attorney's deception in convincing a prisoner that the attorney has timely filed a *habeas* petition on the prisoner's behalf may present such a rare and extraordinary circumstance, beyond the prisoner's control, that could warrant the application of equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).[7] However, contrary to petitioner's assertions, the record he has

---

[7] Petitioner's case is easily distinguished from the *Wynn* case. Wynn was convicted in federal court in 1997 and his conviction became final under parallel provisions of the AEDPA on April 26, 1999. *Wynn*, 292 F.3d at 228. Under the AEDPA, he had one year from that date or until April 26, 2000 to file his collateral attack in the form of a Motion to Vacate pursuant to § 2255. *Id.* On January 6, 1999, petitioner was assured by his appellate attorney that he would file a *habeas corpus* petition pursuant to § 2255 on petitioner's behalf. *Id.* In May 1999, petitioner was informed by his appellate attorney that he had filed the § 2255 motion and that a copy of the motion would be forwarded to him. *Id.* On June 8, 1999, petitioner corresponded to the clerk of court inquiring into the status of his *habeas* action, and he requested copies of any and all motions filed on his behalf. *Id.* On October 13, 1999, he corresponded with the court inquiring into the status of his *habeas* petition and explaining that he had not heard from his appellate counsel in several months. *Id.* A law clerk responded by letter dated October 21, 1999, informing petitioner that the record did not reflect any filings on petitioner's behalf. *Id.* On October 23, 1999, petitioner attempted to contact his appellate attorney but he was unsuccessful. *Id.* On October 24, 1999, petitioner's father contacted the attorney and informed him that according to the court, no pleadings had been filed on petitioner's behalf. *Id.* The attorney responded by stating that the reason the court clerk did not find anything in the record was because he, petitioner's attorney, had filed the petition directly with the judge and was awaiting a response from the Judge; he advised petitioner to be patient. *Id.* at 228-29. In August 2000, after several unsuccessful attempts to contact his attorney, petitioner obtained a copy of the docket sheet, which revealed that nothing had been filed on his behalf. *Id.* at 229. In September, 2000, petitioner wrote a letter to the court explaining the above-chronicled events and seeking legal advice concerning his situation. *Id.* By order signed October 16, 2001, the court made petitioner's letter of September 24, 2000, a part of the record and informed petitioner that the court was not in the position to give him legal advice. *Id.* The court further informed petitioner that the timeliness of a § 2255 motion would only be considered if, and when, petitioner filed such a motion. *Id.* Petitioner filed his pro se motion 78 days later. *Id.*

11

submitted does not support a claim of attorney deception.

Petitioner retained post-conviction counsel on January 18, 2002. As noted above, if the limitations period is considered according to § 2244(d)(1)(A), the AEDPA limitations period had already expired by the time counsel was retained and therefore counsel cannot be blamed for the time-bar.[8]

Even if the limitations period is calculated from February 6, 2004 according to 28 U.S.C. § 2244(d)(1)(D), petitioner is not entitled to equitable tolling. The record establishes that counsel represented petitioner in post-conviction matters from the date he was retained – January 18, 2002, until the date he was discharged – June 29, 2006. Doc. 1-4, Exh. K, at 36; *see also* Doc. 1-4, at 5-6. As noted above, if limitations is calculated pursuant to part D, then the one-year period commenced on March 11, 2005 (when the Louisiana Supreme Court denied writs) and ended one year later, on or about March 11, 2006. While the second post-conviction application was pending in the Louisiana Supreme Court, petitioner and his attorney discussed various options and counsel indicated that he would prepare an application for post-conviction relief on petitioner's behalf. Doc. 1-4, Exhs. F, G, at 30-31.

In February 2005 petitioner again corresponded with counsel and indicated his belief that counsel would file a third application for post-conviction relief. Doc. 1-4, Exh. H, at 32. In March and again in May 2005, counsel instructed his staff to prepare an application for post-conviction relief. Doc. 1-4, Exh. I, at 33-34. For reasons not explained in the petition, memorandum, or

---

[8] *Triplett v. King*, 250 Fed. Appx. 107 (5th Cir. 2007) is analogous. In that case, the court noted that the petitioner retained post-conviction counsel after the AEDPA limitations period had expired and therefore, "any subsequent misrepresentation allegedly made by counsel . . . regarding whether counsel filed the § 2254 petition did not cause or contribute to the petition's untimeliness." *Triplett*, 250 Fed. Appx. at 108.

12

exhibits, the pleading was not filed.

Nevertheless, petitioner waited until January, 2006 to inquire about the status of his application; and thereafter waited until June 2006, after the limitations period had already expired, to terminate the employment relationship with counsel. Doc. 1-4, Exhs. J, K. Petitioner's representative obtained a copy of the victim's recanting statement in July 2006, but inexplicably waited another nine months before filing his untimely third application for post-conviction relief. Doc. 1-4, Exh. L; Doc. 1-4, Exh. M, at 41-58.

The evidence does not suggest, much less establish, that counsel at any time deliberately deceived petitioner. At no time did counsel claim that pleadings had in fact been filed on petitioner's behalf. At worst, it appears that counsel, or his staff, was negligent, and that fact is insufficient to warrant the application of equitable tolling since "mere attorney error or neglect is not an circumstance such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002), *cert. denied* 539 U.S. 918, 123 S. Ct. 2277, 156 L. Ed. 2d 136 (2003).

Attorney error or neglect does not trigger equitable tolling because prisoners are not constitutionally entitled to counsel during post-conviction *habeas* proceedings. *Cousin*, 310 F.3d at 848-49 (citing *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). In short, the evidence clearly establishes that at no time did counsel assert that pleadings were filed on petitioner's behalf. Counsel either miscalculated the time limitations or was negligent in failing to follow through on his promise to file a third application for post-conviction relief. "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).

Finally, petitioner's claim of actual innocence is insufficient to warrant either statutory or equitable tolling of the AEDPA's limitation period. The one-year limitations period established by 28 U.S.C. § 2244(d) contains no exemption for a petitioner claiming actual innocence of the crimes for which they have been convicted. *Cousin*, 310 F.3d at 849. Further, a claim of actual innocence does not constitute a "rare and exceptional circumstance" so as to justify the application of equitable tolling to overcome the time bar of § 2244(d). *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035, 121 S. Ct. 622, 148 L. Ed. 2d 532 (2000). Thus, based upon the evidence submitted by the petitioner, the undersigned concludes that he is not entitled to equitable tolling.

Petitioner's habeas corpus petition may be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d).

## 2. *Rule 4 Considerations*

Dismissal of this petition is also warranted pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. That rule provides that, following examination of the pleadings by the court, the court must order summary dismissal if it plainly appears from the materials submitted that a petitioner is not entitled to relief. Based upon a review of the petition, memorandum, and exhibits submitted by petitioner, it is clear that the petitioner is not entitled to relief.

### *a. Actual Innocence*

In his *habeas corpus* petition petitioner argues a single Ground for Relief – "Petitioner is actually innocent based on recantation from the victim." Doc. 1, ¶ 5(a), at 2. In his memorandum in support of the petition he argues the following "federal questions" – "Does petitioner enjoy his constitutional right to litigate his newly discovered/recanted testimony in order to prove his actual

14

innocence? Did the trial judge in this case commit a constitutional error in denying petitioner's Motion for a New Trial?" Doc. 1-3, at 7.

To the extent that petitioner contends that he is entitled to federal *habeas corpus* relief pursuant to § 2254 based on his claim of actual innocence, he fails to state a claim for which relief may be provided. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal *habeas* relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal *habeas* courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993). Actual innocence claims provide instead, "a gateway through which a *habeas* petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404, 113 S. Ct. 853.

Read literally, petitioner raises only a claim of actual innocence based upon newly discovered evidence. Under current Supreme Court and Fifth Circuit jurisprudence, he is not entitled to relief.

### *b. Constitutional Claims*

Nevertheless, federal *habeas* courts must construe *pro se* petitions liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Perez v. U.S.*, 312 F.3d 191, 194-95 (5th Cir.2002). Elsewhere petitioner "contends that his conviction was obtained in violation of the Constitution of the United States and the State of Louisiana." Doc. 1-3, at 8. However, his subsequent arguments suggest error in the application of Louisiana law and error committed during the state post-conviction proceedings, neither of which are sufficient to obtain federal *habeas corpus* relief. Thus, to the extent that petitioner is arguing actual innocence as a gateway to permit litigation of his claim

15

that the Louisiana courts misapplied Louisiana law, such claims are not cognizable in this forum. Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119, 102 S. Ct. 1558, 1567, 71 L. Ed. 2d 783 (1982); *Collier v. Cockrell*, 300 F.3d 577, 585 n.5 (5th Cir. 2002).

However, petitioner does present one arguable federal constitutional claim. Petitioner argues that his actual innocence claim should be considered because the recanting witness "stated that she tried to tell the prosecutors that none of these rapes and/or sex crimes happened to her, but the prosecution told her that she had already gone too far and forced her to testify falsely." Doc. 1-3, at 9. Constitutional due process forbids the prosecution from knowingly using, or failing to correct, perjured testimony. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972); *Hafdahl v. Johnson*, 251 F.3d 528, 532-33 (5th Cir. 2001).

To prove such a claim, a *habeas* petitioner must allege and establish that (1) a witness testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). Petitioner claims that the witness informed the prosecutors that none of these rapes and/or sex crimes happened to her, but they told her that she had already gone too far and forced her to testify falsely. A close reading of the witness's affidavit belies that claim, however. According to the affidavit, Stella Renee Mayo "asked to get out of this before we went to trial . . . ."; however, the affidavit does not suggest that her reason for this request was based on the falsity of her prior claims of rape. Accordingly, while the affidavit may tend to establish both falsity and materiality, it does not allege or establish that the prosecutors had knowledge of the alleged falsity of her testimony.

16

### c. Actual Innocence Burden of Proof

Nevertheless, in deference to the petitioner's plight, and in recognition that the interface between actual innocence claims and the application of the AEDPA remains a developing area of the law, the undersigned has reviewed his claim of actual innocence under the guidelines suggested by the United States Supreme Court in *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). According to *Schlup*, for a *habeas* petitioner to make a true showing of actual innocence he must (1) present new reliable evidence, (whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence); (2) that was not presented at trial; and (3) he must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

The only evidence submitted by petitioner to establish his claim of actual innocence is an affidavit that purports to be from the victim wherein she recants her trial testimony. Federal *habeas* courts have long viewed recanting affidavits with "extreme suspicion." *Baldree v. Johnson*, 99 F.3d 659, 663 (5th Cir.1996); *see also Graves v. Cockrell*, 351 F.3d 143, 153 (5th Cir. 2003). The affidavit at issue here stands alone, uncorroborated, and unsupported. In short, the evidence submitted by petitioner is not of the type nor quality demanded by the jurisprudence as it is neither reliable nor trustworthy.

Finally, even assuming *arguendo* that the "new" evidence presented herein by the petitioner is of the type and quality necessary to establish actual innocence, it is abundantly clear that petitioner is unable to surmount the third hurdle erected by *Schlup* – he cannot show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

In analyzing this third hurdle, the following standards must be applied:

17

> First, [the *habeas* petitioner] bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Second, there is no presumption of innocence at a *habeas* proceeding – [the petitioner] comes before the *habeas* court with a strong – and in the vast majority of the cases conclusive – presumption of guilt. Third, the *Schlup* standard does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. Finally, [the court is] not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment. Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.

*Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (internal quotations omitted).

Again, the only evidence of petitioner's actual innocence is the recanting statement of the victim. This statement contradicts her sworn trial testimony. When faced with conflicting testimony from the same witness, a jury would be free to make credibility determinations as to which testimony to believe. The recantation standing alone, therefore, does not make it more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. A reasonable juror could certainly have believed the trial testimony of the victim and found the petitioner guilty. Petitioner has failed to establish that his "new evidence," if presented to a jury, would have resulted in a verdict contrary to the verdict attacked.

### *Conclusion*

According to the foregoing, **IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service to file specific, written

18

objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed in Chambers, Lake Charles, Louisiana, this 7th day of April, 2009.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE